United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AUGUSTINE FALLAY,

        Plaintiff,

   v.

SAN FRANCISCO CITY AND COUNTY,
et al.,

        Defendants.

_____/

No. C 08-2261 CRB

**ORDER GRANTING MOTION TO
STRIKE; GRANTING IN PART AND
DENYING IN PART MOTIONS TO
DISMISS THIRD AMENDED
COMPLAINT**

Plaintiff Augustine Fallay filed a Third Amended Complaint ("TAC") (dkt. 156) in
response to the Court's direction that he amend "consistent with the issues the 9th Circuit
Court has stated are to be adjudicated[.]" See Minutes (dkt. 155); Fallay v. City and Cnty. of
San Francisco, No. 10-16437 (9th Cir. 2015) (dkt. 143) ("Mem.").[1] In that Complaint, as in
his earlier complaints, Plaintiff claims to be the victim of a conspiracy by three separate
groups of Defendants: (1) FBI agents David Carr and Bruce Whitten; (2) the City and County
of San Francisco, the San Francisco Department of Building Inspection, the San Francisco
District Attorney's Office, and City employees Lawrence Badiner, Craig Nikitas, Amy Lee,

---

[1] The FASIC Defendants request that this Court take judicial notice of the Ninth Circuit's
opinion. See Request for Judicial Notice in Support of FASIC Defendants' Mot. to Dismiss (dkt. 157-
3). The opinion is a matter of public record, see Fed. R. Evid. 201; Reyn's Pasta Bella, LLC v. Visa
USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citation omitted) ("We may take judicial notice of
court filings and other matters of the public record."), as well as the law of the case. As always, "while
court records may be sources of reasonably indisputable accuracy when they memorialize some judicial
action, this does not mean that courts can notice the truth of every hearsay statement filed with the
clerk." See Wright & Graham, Federal Practice and Procedure: Evidence 2d § 5104 (2005).

United States District Court
For the Northern District of California

Carla Johnson,[2] and Raymond Tang; and (3) First American Specialty Insurance Company ("FASIC") and employees Robert Dalton and Cindy Lloyd.  See generally TAC.  Plaintiff alleges that this conspiracy consisted of "a campaign of illegal and unconstitutional conducts of discrimination, harassment, humiliation, defamation of character, intimidation, and malicious prosecution . . . ."  See id. ¶ 20.  He includes many of the same claims from his Second Amended Complaint ("SAC"), see SAC (dkt. 68), and some new ones, see TAC.  All three groups of Defendants move to dismiss the TAC on various grounds, and FASIC moves to strike the TAC.  See Insurer Defendant's Special Mot. to Strike and Mot. to Dismiss ("FASIC Mot.") (dkt. 157); Federal Defendants' Mot. to Dismiss ("Fed. Mot.") (dkt. 158)[3]; City and County Amended Mot. to Dismiss ("C.C. Mot.") (dkt. 165).  For the reasons below, the Court GRANTS the Motion to Strike, and GRANTS in part and DENIES in part the Motions to Dismiss.

## I.      BACKGROUND

Plaintiff is an African-American man from Sierra Leone.  See TAC ¶ 9.  In 2000, Plaintiff came to the attention of his employer, San Francisco's Department of Building Inspection, for having taken a $50,000 "loan" from a real estate developer, Tony Fu, who frequently had projects pending with the department.  See Fed. Mot. at 3; C.C. Mot. at 1; Ex. A (dkt. 164-1) at 3[4] (Fu "had projects pending in the Department of Building Inspection pretty much continually since 1994.").  Pursuant to his employment, Plaintiff was required to

---

[2] Plaintiff refers to this Defendant as Karla Johnson, however the City and County Defendants assert that her name is actually Carla Johnson.  See C.C. Mot. at 1.

[3] The Federal Defendants' motion to dismiss is on behalf of the FBI Agents as well as the United States; the United States is not named as a party in the TAC, see TAC ¶¶ 9–19, though it is referenced.

[4] The parties ask that the Court take judicial notice of an Arbitration Decision regarding many of the same issues alleged here.  See Request for Judicial Notice in Support of Fed. Defendants' Mot. to Dismiss (dkt. 159), Ex. C (dkt. 161-1); Defendants' City and County of San Francisco Request for Judicial Notice in Support of Mot. to Dismiss (dkt. 164), Ex. A (dkt. 164-1).  Plaintiff references this document in his Complaint, see TAC ¶ 65, so the Court may take judicial notice of it, see United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.") (citation omitted).  This Order will cite to Ex. A (dkt. 164-1) (the City and County's exhibit) when referring to the Arbitration Decision.

United States District Court
For the Northern District of California

annually submit a Statement of Economic Interest Form 700.  See Ex. A at 3.  Plaintiff failed

to disclose any of the loans or gifts he received from Fu.  Id.  The Department of Building

Inspection terminated Plaintiff.  Id.  Plaintiff alleges that his investigation and termination

were in fact retaliation for Plaintiff's refusing to help the FBI in 1999 with a sting operation.

See TAC ¶ 24.  He further alleges that his status as an African-American immigrant "led the

defendants to pick him out to use, to try to manipulate, and unjustly sanction[.]"  See id.

¶¶ 21–25.

In 2007, the San Francisco District Attorney prosecuted Plaintiff on 33 counts of fraud

and corruption.  See Fed. Mot. at 3; see also Ex. B (dkt. 164-2)[5].  The jury acquitted Plaintiff

of four counts of bribery (counts 13, 14, 15, and 29).  See Ex. B at 4244–47.  The court

declared a mistrial on counts 1-2, 16-29, and 30-33 because the jury could not reach a

verdict.  See id. at 4247–48.  In 2009, pursuant to a collective bargaining agreement, Plaintiff

brought his termination before an arbitrator.  See Ex. A; see also Fed. Mot. at 4.  The

arbitrator upheld Plaintiff's termination, finding that "the nature of the offense in failing to

disclose a $50,000 loan from individuals who he clearly knew did business with the City's

Department of Building Inspection is so destructive of the Employer-employee trust that the

process of engaging in progressive discipline in order to rehabilitate the [Plaintiff] [as the

union suggests] could not possibly be effective."  See Ex. A at 37.

Plaintiff initiated this case in 2008, alleging a wide range of civil rights and

constitutional violations by the City and County of San Francisco, the FBI, the United States

government, his insurance company, and various individuals, including governmental

employees.  See generally Compl. (dkt. 1).  He amended in June 2009, see FAC (dkt. 17),

and the Court dismissed the First Amended Complaint in December 2009, see December

2009 Order (dkt. 67).  Plaintiff promptly amended again in January 2010.  See SAC (dkt. 68).

---

[5] The parties ask that the Court take judicial notice of the jury trial transcript of the verdict.  See Request for Judicial Notice in Support of Fed. Defendants' Mot. to Dismiss (dkt. 159); Defendants' City and County of San Francisco Request for Judicial Notice in Support of Mot. to Dismiss (dkt. 164), Ex. B (dkt. 164-2).  Plaintiff refers to this decision in his TAC, see TAC ¶ 66, so the Court may take judicial notice of it.  The Court will cite to Ex. B (dkt. 164-2) (the City and County's exhibit) when referencing the jury trial verdict transcript.

United States District Court
For the Northern District of California

1  In June 2010, this Court dismissed Plaintiff's Second Amended Complaint, largely

2  based on its being time-barred.  <u>See</u> June 2010 Order (dkt. 112).[6]  Plaintiff appealed.  <u>See</u>

3  Notice of Appeal (dkt. 115).  The Ninth Circuit affirmed in part and reversed in part, and

4  gave Plaintiff specific directions as to how he should amend.  <u>See generally</u> Mem.  This

5  Court instructed Plaintiff to amend for a third time, consistent with the Ninth Circuit's order.

6  <u>See</u> Minute Entry.  Plaintiff filed his TAC, <u>see</u> TAC, and all of the Defendants now again

7  move to dismiss, <u>see</u> Fed. Mot.; FASIC Mot.; C.C. Mot.  FASIC additionally moves to strike

8  the TAC under the anti-SLAPP statute.  <u>See</u> FASIC Mot.

9  ## II.    LEGAL STANDARD

10  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed

11  for failure to state a claim upon which relief may be granted.  Dismissal may be based on

12  either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

13  cognizable legal theory."  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

14  1990).  For purposes of evaluating a motion to dismiss, a Court "must presume all factual

15  allegations of the complaint to be true and draw all reasonable inferences in favor of the

16  nonmoving party."  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).

17  However, the Court is "not bound to accept as true a legal conclusion couched as a factual

18  allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>Clegg v. Cult Awareness Network</u>,

19  18 F.3d 752, 754–55 (9th Cir. 1994).  Moreover, a "pleading that offers 'labels and

20  conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor

21  does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

22  enhancement.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.</u>

23  <u>Twombly</u>, 550 U.S. 544, 555, 557 (2007)).  Rather, a complaint must plead "sufficient

24  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id.</u>

25  (quoting <u>Twombly</u>, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual

26

27  _____

28  [6] The Court noted that Plaintiff raised the issue of equitable tolling for the first time in his Opposition brief but failed to provide any details in support of that assertion either in his brief or at the motion hearing.  <u>See id.</u> at 6–8.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

California's anti-SLAPP statute "is designed to discourage suits that 'masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so.'" In re NCAA Student-Athlete Name & Likeness Licensing Litig., 724 F.3d 1268, 1272 (9th Cir. 2013) ("NCAA Student-Athlete Litig.") (quoting Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003)). The anti-SLAPP statute sets forth a procedure by which defendants can move to strike SLAPP claims:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. P. § 425.16(b)(1).

When deciding a motion to strike pursuant to the anti-SLAPP statute, the court's analysis has two-steps. First, "defendant bears the initial burden to show that the statute applies because the lawsuit arises from defendant's act in furtherance of its right of petition or free speech." Doe v. Gangland Prods., Inc., 730 F.3d 946, 953 (9th Cir. 2013).[7] If the defendant makes that showing, the court then considers whether the plaintiff has demonstrated "a reasonable probability" of prevailing on the merits of his claims. NCAA Student-Athlete Litig., 724 F.3d at 1273 (quoting Batzel, 333 F.3d at 1024). The Ninth Circuit has characterized the standard to withstand an anti-SLAPP motion as "a low bar": "plaintiff must demonstrate that the complaint is both legally sufficient and supported by a

---

[7] Such acts include:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

§ 425.16(e); see also Greater LA Agency on Deafness v. Cable News Network, Inc., 862 F. Supp. 2d 1021, 1024–25 (N.D. Cal. 2012) (vacated on other grounds).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  sufficient prima facie showing of facts to sustain a favorable judgment if the evidence

2  submitted by the plaintiff is credited." Roberts v. McAfee, Inc., 660 F.3d 1156, 1163 (9th

3  Cir. 2011) (quoting Manufactured Home Cmties., Inc. v. Cnty. of San Diego, 655 F.3d 1171,

4  1176–77 (9th Cir. 2011)).  Although "the court does not weigh the credibility or comparative

5  probative strength of competing evidence, it should grant the motion if, as a matter of law,

6  the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish

7  evidentiary support for the claim." Id.

8  **III.    DISCUSSION**

9        Each of the Defendants argues various grounds for dismissal.  The Federal Defendants

10 argue that the TAC raises claims that were barred by the Ninth Circuit, and that Plaintiff's

11 Bivens claim for malicious prosecution fails because he did not receive a favorable outcome

12 at trial.  See Fed. Mot.  The FASIC Defendants move to strike due to California's anti-

13 SLAPP statute and in the alternative, move to dismiss for the same reasons.  See FASIC Mot.

14 The City and County Defendants argue that each of Plaintiff's claims fail for different

15 reasons.  See C.C. Mot.  The Court will address each Defendant's motion in turn.

16       **A.    Federal Defendants**

17       On appeal, the Ninth Circuit reversed this Court as to the Bivens action for malicious

18 prosecution[8] and affirmed this Court's dismissal of Plaintiff's federal claims against the

19 Federal Defendants.  See Mem. at 2–3.  In the TAC, Plaintiff alleges that "Defendants'

20 orders, authorizations, and other actions violated Plaintiff's due process rights by: (a)

21 subjecting him to prolonged, arbitrary, detention in his home without charges or authority of

22 any kind; and (b) denying him access to counsel, gathering information under false pretenses

23 without a subpoena, knowingly concocting evidence to create probable cause . . . [giving]

24 rise to a cause of action for damages directly under the [F]ourth, Fifth and [F]ourteenth

25 Amendments" under Bivens.  See TAC ¶ 110; Bivens v. Six Unknown Named Agents of

26 Federal Bureau of Narcotics, 403 U.S. 388 (1971).  The Federal Defendants argue that (1)

27 _____

28      [8] The Ninth Circuit reversed on this point because it found that the claim "was not barred by the statute of limitations because it did not accrue until after the state court criminal proceedings terminated." See Mem. at 2 (citation omitted).

6

United States District Court
For the Northern District of California

1   any claims against the United States are barred,[9] see Fed. Mot. at 6; (2) the TAC's allegations

2   go "beyond the scope of leave" given by the Ninth Circuit and this Court, see Fed. Mot. at 7;

3   and (3) the Bivens claim fails because Plaintiff did not receive a favorable outcome at trial

4   and because there was probable cause against him, see Fed. Mot. at 9–19.

5          The claims against all of the Federal Defendants are DISMISSED.

6          First, the United States itself is not named as a party in the TAC.  See TAC ¶¶ 9–19.

7   Moreover, the Federal Defendants are correct that the Ninth Circuit affirmed this Court's

8   order dismissing with prejudice all claims against the United States.  See Fed. Mot. at 6;

9   Mem. at 2–3 (reversing only this Court's dismissal of Plaintiff's Bivens action for malicious

10  prosecution as to Defendants Carr and Whitten); see also June 2010 Order (dkt. 112) at 4–5.

11  Thus, to the extent that Plaintiff still alleges claims against the United States, those claims are

12  dismissed with prejudice; only the claims against Defendants Carr and Whitten are properly

13  part of the TAC.

14         Second, the Federal Defendants are correct that the TAC includes allegations that are

15  beyond what the Ninth Circuit permitted.  See Fed. Mot. at 7–9; see also Mem. at 2–3.  This

16  Court did not consider the claims in the SAC that it had dismissed with prejudice from the

17  FAC.  See June 2010 Order at 4–5; see also Minute Entry (dkt. 66); December 2009 Order

18  (dkt. 67) (dismissing all of Plaintiff's claims against the Federal Defendants with prejudice).

19  The Ninth Circuit found that "Fallay could have amended his SAC to allege a Bivens action

20  for malicious prosecution."  See Mem. at 2.  Additionally, it found that a malicious

21  prosecution claim "was not barred by the statute of limitations . . . ."  See id.  This Court's

22  dismissal of the other claims against the Federal Defendants was affirmed.  See Mem. at 2–

23  3.  Yet the TAC alleges violations of 42 U.S.C. § 1983, see TAC ¶¶ 110–112, § 1985, see id.

24  ¶¶ 113–114, and false arrest and false imprisonment, see id. ¶¶ 116–117, as well as violations

25  of state law including California Civil Code §§ 52.1(b) and 51.7, see id. ¶¶ 118–119,

26

27          [9] Federal Defendants acknowledge that "[i]t is not entirely clear that the TAC brings claims
28  against the United States."  Fed. Mot. at 6 n.1.  The TAC specifically references the Unites States
    Government as a Defendant in ¶ 117 and in the titles of the second, third, and fourth causes of action,
    but does not name the United States Government as a party.

1    malicious prosecution, see id. ¶¶ 120–121, and intentional infliction of emotional distress,

2    see id. ¶ 122.  Additionally, the TAC for the first time includes allegations of pre-arrest

3    conduct.  See Fed. Mot. at 9; TAC ¶¶ 110–111.  None of these claims were permitted by the

4    Ninth Circuit opinion when it reversed this Court's dismissal of Plaintiff's Bivens claim, and

5    affirmed the Court's dismissal of "all other claims against the Federal Defendants."  See

6    Mem. at 2–3 ("Fallay does not challenge the district court's order except for his argument

7    regarding the Bivens claim for malicious prosecution, which was discussed above.

8    Accordingly, we affirm the district court's order dismissing Fallay's other federal claims

9    against the Federal Defendants.").  The Court therefore dismisses all non-malicious

10   prosecution claims, including allegations regarding pre-arrest conduct, false arrest and false

11   imprisonment, intentional infliction of emotional distress, and alleged violations of California

12   Civil Code §§ 52.1(b) and 51.7.[10]

13          Third, the Federal Defendants argue that the Bivens claim[11] for malicious prosecution

14   fails for three reasons: (1) Plaintiff did not receive a favorable outcome on the merits of the

15   underlying 2007 trial; (2) the criminal court's preliminary hearing establishes probable cause;

16   (3) despite the outcome, there was probable cause to bring charges against Plaintiff; and (4)

17   in any event, the decision of the District Attorney to prosecute breaks the chain of causation

18   and thus, precludes the malicious prosecution claim.  See Fed. Mot. at 10–19.  They are

19   correct.  In order for Plaintiff to succeed on a Bivens action against individual federal

20

21          [10] The Federal Defendants also argue that, aside from pre-arrest conduct being outside the scope
     of the Ninth Circuit's leave to amend, those claims are also time-barred.  See Fed. Mot. at 9.
22   Specifically, the events giving rise to those claims "arose prior to the end of 2005, by which time Fallay
     had already been allegedly detained, arrested, and fired from his job with the City."  Id.  Plaintiff filed
23   the original complaint in April 2008, which is beyond the two year statute of limitations.  Id.  Federal
     Defendants further argue that "[t]he Ninth Circuit implicitly agreed that all non-malicious prosecution
24   claims were time-barred, as it only gave Plaintiff leave to bring a Bivens claim for malicious prosecution
     on remand."  Id. (citing Mem. at 3).  Plaintiff did not respond to this argument in his Response.  See
25   Response to City Defendants' Mot. to Dismiss (dkt. 167).  The Court does not reach this issue as the
     Federal Defendants are correct that it is outside the scope.
26

27          [11] The Defendants argue that the TAC does not explicitly allege a Bivens malicious prosecution
     claim, although the Ninth Circuit gave Plaintiff leave to amend solely on this particular point.  See Fed.
28   Mot. at 10 n.2; TAC ¶¶ 120-121 (pleading malicious prosecution under state law); see also Mem. at 2.
     However, a prior section title includes the words "Bivens Claim[,]" which shows that Plaintiff likely
     intended to amend his malicious prosecution claim consistent with the Ninth Circuit's ruling

employees (Agents Carr and Whitten), he must show that the action "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination to his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." See Roberts v. McAfee, Inc., 660 F.3d 1156, 1163 (9th Cir. 2011) (ruling on an action under § 1983); see also Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991) (stating that "[a]ctions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens.").

### 1.      Plaintiff Did Not Receive a Favorable Outcome at Trial

Throughout the TAC, Plaintiff references a supposed favorable outcome in his trial. See e.g., TAC ¶ 66 ("The Plaintiff went to trial and the jury returned the four most serious charges not guilty, and almost the rest of the other charges were 11 to 1 for not guilty."), ¶ 120 ("The case was terminated in Mr. Fallay's favor.").  However, the court declared a mistrial on counts 1-2, 16-28, and 30-33 because of a hung jury.  See Ex. B (Tr. of Jury Trial) at 4248; see also Fed. Mot. at 11.  "An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence."  Awabdy v. City of Adelanto, 368 F.3d 1062, 1068 (9th Cir. 2004) (citing Heck v. Humphrey, 512 U.S. 477, 484–85 (1994)).  "[A] dismissal in the interests of justice satisfies this requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant."  Awabdy, 368 F.3d at 1068.  The hung jury in Plaintiff's case does not constitute a showing of a favorable outcome because it does not "indicate [Plaintiff's] innocence."  See id.

### 2.      The Preliminary Hearing Shows That There Was Probable Cause For Trial

"[I]t is a long-standing principle . . . that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie—but not conclusive—evidence of probable cause."  Id. at 1067.  A plaintiff can overcome this prima facie finding by showing that the prosecution "was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."  See id. (citations

1   omitted).  The Federal Defendants argue that "Plaintiff's <u>Bivens</u> malicious prosecution claim

2   must be dismissed for this second, independent reason[,]" <u>see</u> Fed. Mot. at 14, because the

3   Superior Court Judge ruled that there was sufficient evidence to go to trial, <u>see</u> Fed. Mot. at

4   13.  However, because of Plaintiff's opportunity to rebut the prima facie finding, this

5   argument is best analyzed in conjunction with the two arguments below—that despite the

6   outcome, probable cause existed, and that "the decision to file a criminal complaint is

7   presumed to result from an independent determination on the part of the prosecutor, and thus,

8   precludes liability for those who participated in the investigation or filed a report that

9   resulted in the initiation of proceedings."  See <u>Awabdy</u>, 368 F.3d at 1067 (citation omitted).

### 3. Despite the Outcome, Probable Cause Existed to Bring Charges

11      The Federal Defendants argue that despite the outcome, Plaintiff cannot show the

12   absence of probable cause because "[t]he allegations in plaintiff's TAC, coupled with

13   judicially noticeable facts, demonstrate that the bribery and corruption charges against Mr.

14   Fallay were supported by at least probable cause."  <u>See</u> Fed. Mot. at 14.  Furthermore,

15   "[b]ecause many situations which confront officers in the course of executing their duties are

16   more or less ambiguous, room must be allowed for some mistakes on their part."  <u>See</u> <u>id.</u>

17   (citing <u>McSherry v. City of Long Beach</u>, 584 F.3d 1129, 1135 (9th Cir. 2009) (quoting

18   <u>Brinegar v. United States</u>, 338 U.S. 160, 176 (1949)).  Federal Defendants list an array of

19   facts obtained by the FBI Agents when they presented the case to the district attorney.  <u>See</u>

20   Fed. Mot. at 15–17 (predominantly regarding the $50,000 "loan" accepted by Plaintiff

21   without proper documentation or disclosure); <u>see also</u> Ex. A (Arbitration Decision) (dkt. 164-

22   1) at 6; TAC ¶ 65.  Taking these things into consideration, this Court can find that there was

23   "a fair probability or substantial chance of criminal activity."  <u>See</u> <u>Lacey v. Maricopa Cnty.</u>,

24   693 F.3d 896, 918 (9th Cir. 2012) (citation omitted) (defining the circumstances in which

25   probable cause exists).

### 4. The District Attorney's Decision to Prosecute Precludes a Claim of Malicious Prosecution

27      A presumption exists that prosecutors exercise independent judgment.  <u>See</u> <u>Awabdy</u>,

28   368 F.3d at 1067.  In other words, "[a] prosecutor's independent judgment may break the

chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff." See Beck v. City of Upland, 527 F.3d 853, 862 (9th Cir. 2008) (citing Hartman v. Moore, 547 U.S. 250, 262–63 (2006)) (stating that "[p]ut in traditional tort terms, the prosecutor's independent decision can be a superseding or intervening cause of a constitutional tort plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution."); see also McSherry, 584 F.3d at 1137–38.  A plaintiff can rebut this presumption by "showing that the district attorney was pressured or caused by the investigating officers to act contrary to his independent judgment." See Harper v. City of Los Angeles, 533 F.3d 1010, 1027 (9th Cir. 2008) (citing Smiddy v. Varney, 665 F.3d 261, 266 (9th Cir. 1981)) (internal quotation omitted). Moreover, "[s]uch evidence must be substantial[.]" See id. (citation omitted).

Plaintiff does not point to any evidence to rebut the presumption that the District Attorney exercised independent judgment to bring charges against him.  The Federal Defendants argue that Plaintiff makes "conclusory allegations" and fails to "identify[] exactly what [the FBI agents] fabricated." See Fed. Mot. at 19.  Despite his voluminous allegations, see TAC ¶¶ 26–49, Plaintiff offers no evidence that any of the alleged conduct caused the District Attorney "to act contrary to his independent judgment[,]" see Harper, 533 F.3d at 1027.  Furthermore, as stated above, a Superior Court Judge in fact found there to be probable cause to go to trial.  See Fed. Mot. at 13.  For these reasons, the Court GRANTS Federal Defendants' motion to dismiss, with prejudice.[12]

## B.      FASIC Defendants

In 2001, a fire started near Plaintiff's home, causing damage.  See TAC ¶ 93; FASIC Mot. at 4.  Plaintiff alleges that the FASIC Defendants settled his claim "after seven months of bitter wrangling that almost resulted in a lawsuit." See TAC ¶ 93.  Plaintiff alleges that during this process, FASIC's Vice President, Robert Dalton, was racist and threatened him.

---

[12] The Ninth Circuit vacated this Court's dismissal of the state law claims against the Federal Defendants because federal claims remained at issue in this litigation against them.  See Mem. at 7. However, because the Court is dismissing the one remaining federal claim against the Federal Defendants, this Court will not exercise supplemental jurisdiction over the state law claims.

United States District Court
For the Northern District of California

See id. ¶¶ 93–95.  Plaintiff alleges that the funds he received were "much lower than what it took to do the repairs."  See id. ¶ 95.  He settled the claim and had his house repaired in 2002.  Id. ¶ 95.  In 2005, Plaintiff alleges that, in an attempt to "pile on" charges to the state fraud case, the FBI contacted FASIC, and requested his entire file.  See id. ¶¶ 96–98 ("The problem is that FASIC released not 'some,' documents, but Plaintiff's entire Insurance documents, including those in which any Insured has a reasonable expectation of privacy, to the FBI."); see also Decl. of Robert Dalton (dkt. 157-2) at 2 ("[T]he FBI called requesting a copy of Mr. Fallay's claim file, because they suspected insurance fraud.").[13]  After receiving this information, Dalton reported a suspected fraud pursuant to Cal. Ins. Code § 1872.4.[14] See Decl. of Robert Dalton at 3.  Plaintiff alleges that the alleged insurance fraud is a lie; he argues that because of "Mr. Dalton's deep seated malice and reckless disregard for the Plaintiff's rights, FASIC falsified a Fraud Complaint for the court dated August 31, 2005 and in April 2007, in the middle of the Criminal trial, Mr. Dalton . . . push[ed] it to Plaintiff in a most threatening and intimidating manner."  See TAC ¶ 100.  Dalton testified at Plaintiff's trial pursuant to a subpoena.  See Dalton Decl. at 4.  Plaintiff insists that Plaintiff's claims are based on "the investigative phase [of his insurance claim], and Dalton's own Declaration after the trial; Nothing to do with filing and prosecution or with the trial phase, except by way of corroborating certain facts[,]" see id. ¶ 106.

In 2009, this Court dismissed with prejudice Plaintiff's § 1981 and § 1983 claims and dismissed without prejudice Plaintiff's § 1985 claim.  See December 2009 Order (dismissing

---

[13] The Court can take judicial notice of the Robert Dalton declaration submitted by the FASIC Defendants because Plaintiff references the declaration in his TAC.  See TAC ¶ 99; see also Ritchie, 342 F.3d at 908.

[14] That section provides, in relevant part, "(a) Any company licensed to write insurance in this state that reasonably believes or knows that a fraudulent claim is being made shall, within 60 days after determination by the insurer that the claim appears to be a fraudulent claim, send to the Fraud Division, on a form prescribed by the department, the information requested by the form and any additional information relative to the factual circumstances of the claim and the parties claiming loss or damages that the commissioner may require."

United States District Court
For the Northern District of California

1    claims from Plaintiff's FAC).[15]  Plaintiff filed his SAC.  See SAC.  In 2010, this Court

2    dismissed Plaintiff's § 1985 claim for failure to state a claim and Plaintiff's state law claims

3    for lack of subject matter jurisdiction.  See June 2010 Order at 9–10.  On appeal, the Ninth

4    Circuit affirmed this Court's dismissal of Plaintiff's § 1983 and § 1985 claims.  See Mem. at

5    5–6; June 2010 Order.  However, it vacated this Court's dismissal of the state law claims,

6    "leav[ing] the issue of whether or not supplemental jurisdiction should be exercised over the

7    state law claims against the FASIC Defendants[.]"  Mem. at 7–8.

8           Now in his TAC, Plaintiff alleges violations of Cal. Civ. Code §§ 52.1(b) and 51.7,

9    see TAC ¶¶ 118–119, breach of contract/good faith and fair dealing, see id. ¶¶ 123–124,

10   intentional infliction of emotional distress, see id. ¶ 122, and malicious prosecution, see id.

11   ¶¶ 120–121.  He argues that the FASIC Defendants gave private information to the FBI

12   without a subpoena and fabricated a fraud complaint against him.  See id. ¶¶ 88–92.  The

13   FASIC Defendants move to strike pursuant to Cal. Code of Civ. Proc. ("CCP") § 425.16,

14   alleging that the claims against them are a SLAPP (strategic lawsuit against public

15   participation).  See FASIC Mot. at 4–12.  In the alternative, FASIC Defendants move to

16   dismiss for failure to state a claim.  See id. at 12.  They also ask this Court to decline to

17   exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18   See id. at 13–16.

19                    **1.    Motion to Strike**

20          Plaintiff's allegations stem from the FASIC Defendants' having turned over Plaintiff's

21   file to the FBI.  See TAC ¶¶ 96–98 (". . . Mr. Dalton . . . saw a willing partner in the FBI to

22   get back at the Plaintiff, [and] jumped into the case uninvited; the FBI and the DA's office

23   Investigators found in FASIC a unity of interest and commonality of purpose; FASIC

24   became extremely active in the case.  On July 26, 2005 FASIC shipped the entire file to

25   Agent Carr.").  The FASIC Defendants argue that this "conduct is, per se, the protected

26   exercise of Insurer Defendant's rights and Plaintiff cannot make the requisite showing of a

27

28          [15] This Court also dismissed with prejudice Plaintiff's intentional infliction of emotional distress
     and breach of the covenant of good faith and fair dealing claims.  See id.  This Court dismissed without
     prejudice Plaintiff's malicious prosecution and Cal. Civ. Code § 52.1 claims.  See id.

probability of prevailing." <u>See</u> FASIC Mot. at 5.  As discussed above, the Court in assessing

an anti-SLAPP motion must engage in a two-step analysis, asking first whether the

Defendants made "a prima facie showing that the plaintiff's suit arises from" a protected

activity and second whether Plaintiff can show a "reasonable probability" of prevailing on

the merits of his claim.  <u>See</u> <u>Batzel v. Smith</u>, 333 F.3d 1018, 1024 (9th Cir. 2003).

### a.    Plaintiff's Suit Arises From a Protected Activity

The FASIC Defendants argue that the allegations against them "are based on

cooperating with the FBI and testifying against [Plaintiff] at trial," which is a "protected

activit[y] in connection with an 'official proceeding authorized by law.'"  <u>See</u> FASIC Mot. at

6 (citation omitted).[16]  Dalton asserts that the Insurance Fraud Prevention Act requires

"insurance companies and their authorized agents . . . to release certain documentation and

information to federal and state authorities upon request; no subpoena is required."  <u>See</u>

Decl. of Robert Dalton at 3.  The aim of the Act is to protect the public from fraudulent

claims made by individuals.  <u>See</u> Cal. Ins. Code § 1871.  Moreover, the FBI requested this

information pursuant to an "official proceeding" that resulted in charges being brought

against Plaintiff.  Because the underlying conduct consisted of activity that falls within CCP

§ 425.16(e), the Court finds this prong satisfied.

### b.    Plaintiff Cannot Show a Reasonable Probability of Prevailing

The FASIC Defendants argue that "Plaintiff cannot establish that he will prevail on

any of his causes of action against the Insurer Defendants and the TAC against them should

be stricken in its entirety."  <u>See</u> FASIC Mot. at 7.  The Court will address each cause of

action.

Plaintiff alleges that the FASIC Defendants violated Cal. Civ. Code § 52.1 by

"concocting, falsifying, and fabricating evidence [that] threaten[ed] Plaintiff with loss of

liberty, to physical and emotional threat of going to jail, with clear malice as detailed in the

---

[16] They also note that despite Plaintiff's allegations of falsity, their conduct is still protected activity.  <u>See</u> FASIC Mot. at 6.  In their reply, the FASIC Defendants argue that "even allegedly false testimony[] is protected by the anti-SLAPP statute unless there is <u>conclusive evidence of the falsity</u>." <u>See</u> FASIC's Reply (dkt. 169) at 4 (citing <u>Zucchet v. Galardi</u>, 229 Cal. App.4th 1466, 1480 (2014)).

brief, clearly constitut[ing] interference by threats, intimidation and coercion of rights secured by the Constitution and laws of the United States . . . and laws of California . . . ." See TAC ¶ 118.  For Plaintiff to succeed, he must make "a showing of (1) an interference with constitutional rights, and (2) 'threats, intimidation, or coercion.'"  See Harding v. City & Cnty. of San Francisco, 602 F.App'x 380, 384 n.4 (9th Cir. 2015) (unpublished) (citing Lopez v. Youngblood, 609 F. Supp. 2d 1125, 1143 (E.D. Cal. 2009)).  Defendants argue that "Plaintiff's sole allegation of intimidation is his assertion that Mr. Dalton showed him a copy of an allegedly fake complaint for insurance fraud in court . . . in a threatening and intimidating manner."  See FASIC Mot. at 7.  Whether or not this is the "sole allegation of intimidation," Plaintiff's allegations, see TAC ¶¶ 88–106, do not suggest a "reasonable probability" that Plaintiff would succeed on the merits of this claim.

Plaintiff alleges that the FASIC Defendants violated Cal. Civ. Code § 51.7 through the "presentation in the middle of trial . . . [of] a copy of a fraud report which they had prepared and seemingly backdated, which turned out to be fraudulent was presented with such drama in the courtroom that made the Plaintiff feel threatened and intimidated by another possible fake investigation beyond the trial he was then going through."  See TAC ¶ 119. Furthermore, Plaintiff alleges that "[t]his was done with reckless malice and clear intention of denying the Plaintiff his rights to be free from intimidation by threat of violence . . . ." See id. ¶ 119.  The FASIC Defendants argue that Plaintiff failed to make a showing that they "threatened him with violence or intimidate[d] him by threat of violence[.]"  See FASIC Mot. at 8; see also Moreno v. Town of Los Gatos, 267 F.App'x 665, 666–67 (9th Cir. 2008) (unpublished) (stating that § 51.7 "expressly requires that a plaintiff allege 'violence, or intimidation by threat of violence[,]'" and ruling that "an arrest or threat of arrest alone does not necessarily involve violence or a threat of violence[.]" ).[17]  The comments that Plaintiff

---

[17] Because no violence or intimidation by a threat of violence occurred, the Court need not reach the issue of whether any such intimidation occurred due to racial animus.  See FASIC Mot. at 8; Cal. Civ. Code § 51.7 ("All persons . . . have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, . . . [or] national origin . . . ." (emphasis added); see also Winarto v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1289 (9th Cir. 2001).

1    attributes to Dalton, see TAC ¶ 93 (". . . Robert Dalton . . . asked the Plaintiff in one of those

2    arguments whether there were Insurance Companies where he came from[.]"), do not rise to

3    the level of intimidation encompassed in § 51.7.  Plaintiff does not establish that there is a

4    "reasonable probability" that he would succeed on the merits of this claim.

5         Plaintiff alleges that the FASIC Defendants committed a breach of contract, and of the

6    covenant of good faith and fair dealing, by "engaging in the conduct described in the brief,

7    and by failure to protect the plaintiff's information under the policy by freely making the

8    entire (not some) information (unknown to the plaintiff) available to third Parties without a

9    subpoena, depriv[ing] the plaintiff the chance to challenge such request.  FASIC also

10   engaged in falsities and knew they were false when they peddled them to the authorities out

11   of raw malice."  See id. ¶¶ 123–124.  The FASIC Defendants argue that Plaintiff's claims are

12   conclusory and that he fails to provide any of the relevant terms of the policy to show that the

13   FASIC Defendants in fact breached any of its terms.  See FASIC Mot. at 8–9.[18]  The FASIC

14   Defendants are correct; Plaintiff does not make a showing that there is a "reasonable

15   probability" of succeeding on the merits of a breach of contract claim.

16        Plaintiff alleges that the FASIC Defendants committed intentional infliction of

17   emotional distress through conduct that was "intentional, extreme, unreasonable, outrageous

18   and malicious and done for the purpose of causing plaintiff to suffer humiliation, mental

19   anguish, and emotional and physical distress."  See TAC ¶ 122.  "By engaging in such

20   conduct, Defendants intentionally ignored or recklessly disregarded the foreseeable risk that

21   Plaintiff would suffer extreme emotional distress . . . . As a proximate result of the said

22   conduct, Plaintiff suffered severe emotional distress, pain and suffering, fear, anxiety,

23   embarrassment, discomfort and humiliation."  Id. ¶ 122.  The FASIC Defendants argue that

24

25

26

27

28        [18] To the extent that he does include allegations about the policy, Plaintiff concedes that FASIC
     paid out the claim pursuant to his fire insurance policy.  See TAC ¶ 95; see also FASIC Defendants'
     Reply at 7.

United States District Court
For the Northern District of California

1  because this Court dismissed this cause of action with prejudice, the claim must fail.  See

2  FASIC Mot. at 9; June 2009 Order (dkt. 67) at 2.[19]

3        Plaintiff complains that FASIC falsely accused him and that FASIC fabricated

4  evidence "to create probable cause to get the Plaintiff indicted[.]"  See TAC ¶¶ 87–92.  But

5  this conduct is privileged, and cannot be a basis for this cause of action.  See Cal. Civil Code

6  § 47 ("a privileged publication is one made . . . in any . . . judicial proceeding [or] in any

7  other official proceeding authorized by law."); Williams v. Taylor, 129 Cal.App.3d 745, 753

8  (1982) ("a communication concerning possible wrongdoing, made to an official

9  governmental agency such as a local police department, and which communication is

10  designed to prompt action by that entity, is as much a part of an 'official proceeding' as a

11  communication made after an official investigation has commenced.").

12        Additionally, the conduct underlying a claim for intentional infliction of emotional

13  distress must be "so outrageous in character, and so extreme in degree, as to go beyond all

14  possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

15  civilized community."  Cochran v. Cochran, 65 Cal.App.4th 488, 496 (1998).  A court may

16  determine at the pleading stage whether a defendant's alleged conduct is so "outrageous" as

17  to permit recovery.  See Trerice v. Blue Cross of Cal., 209 Cal.App.3d 878, 883 (1989).  The

18  FASIC Defendants' conduct does not rise to the level of "beyond all bounds of possible

19  decency."  Plaintiff does not make a showing that there is a "reasonable probability" that he

20  would succeed on the merits of this claim.

21        Plaintiff alleges that the FASIC Defendants engaged in malicious prosecution because

22  they, along with the other Defendants, "initiated and continued to play an active role in the

23  case through the trial to the end with the discriminatory purpose of illegally terminating him

24  and to serve jail time.  The charges were baseless and malicious."  See TAC ¶¶ 120–121.

25  The FASIC Defendants argue that they "complied with valid requests under the Insurance

26

27        [19] The FASIC Defendants request that the Court take judicial notice of this Court's 2009 Order.
28  See Request for Judicial Notice (dkt. 154-3), Ex. B; June 2009 Order (dkt. 67).  This court can take
judicial notice of this Order as it is the law of the case and a matter of public record.  See Fed. R. Evid.
201; Reyn's Pasta Bella, LLC, 442 F.3d at 746 n.6.

United States District Court
For the Northern District of California

Code[20] or pursuant to a trial court's order when they responded to the FBI's request for information and documentation, filed a fraud report with the Department of Insurance and testified at trial." See FASIC Mot. at 10.  They are correct.

To establish a claim of malicious prosecution, Plaintiff must show that the FASIC Defendants' conduct "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." See Kaufman v. Capital Quest, Inc., C-11-1301 JCS, 2011 WL 5864159, at *18 (N.D. Cal. Nov. 22, 2011) (quoting Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 292 (2006)).  First, as noted above, Plaintiff did not receive a favorable termination at trial.  Second, as noted above, probable cause existed to bring the charges against Plaintiff and to go to trial.  Third, Plaintiff has not made a showing that the FASIC Defendants' role in that proceeding was malicious or that the proceeding was "commenced at the direction" of FASIC.  FASIC simply complied with the law in providing "all relevant information" to the FBI upon written request.  See FASIC Mot. at 10, Cal Ins. Code § 1873; Decl. of Robert Dalton Ex. B.[21]  Plaintiff cannot show that there is a "reasonable probability" of succeeding on the merits of this claim.

Plaintiff cannot show that he would succeed on the merits of any of the above claims. Because both anti-SLAPP prongs have been met, the Court GRANTS the motion to strike. As such, the FASIC Defendants are entitled to recover attorneys' fees and costs.  See CCP § 425.16(c)(1); Batzel, 333 F.3d at 1025.

### 2.     Motion to Dismiss

---

[20] Cal. Ins. Code § 1873 provides in relevant part: "(a) Upon written request to an insurer by officers designated in subdivisions (a) and (b) of Section 830.1 and subdivision (a) of Section 830.2, and subdivisions (a), (c), and (i) of Section 830.3 of the Penal Code, an insurer, or agent authorized by that insurer to act on behalf of the insurer, shall release to the requesting authorized governmental agency any or all relevant information deemed important to the authorized governmental agency that the insurer may possess relating to any specific insurance fraud."

[21] The Court can take judicial notice of the FBI's request for documents to FASIC because Plaintiff references and quotes this letter in his TAC.  See TAC ¶ 96; Ritchie, 342 F.3d at 908.

**United States District Court**
For the Northern District of California

1    In the alternative to a motion to strike, the FASIC Defendants request that this Court

2   dismiss the charges against them.  See FASIC Mot. at 12.  Because the Court grants the

3   motion to strike, the Court need not reach the motion to dismiss.

4       **C.    City and County Defendants**

5       On appeal, the Ninth Circuit reversed this Court's dismissal of Plaintiff's § 1981,

6   § 1983, and § 1985 claims.  See Mem. at 3.  The Ninth Circuit acknowledged that Plaintiff

7   did not allege when tolling of those sections' statutes of limitations started, but held that

8   Plaintiff could amend his complaint to include allegations of such a date.  See id. at 3–4.  The

9   Ninth Circuit affirmed this Court's dismissal of claims against the District Attorney's Office

10  and Mr. Tang, an investigator.  See id. at 4.  In doing so, the Circuit left to this Court the

11  issue of "whether or not absolute immunity applies to the investigation prior to the criminal

12  charge and proceedings[]."  See id.  The Ninth Circuit affirmed the dismissal of Plaintiff's

13  § 1983 claims against Amy Lee.  See id.[22]

14      In his TAC, Plaintiff alleges violations of § 1981, § 1983, and § 1985, state law false

15  arrest and false imprisonment, violations of § 52.1(b) and § 51.7, malicious prosecution, and

16  intentional infliction of emotional distress.  See TAC ¶¶ 110–114, 118–122.  He brings those

17  claims against the City and County, and combinations of the following individuals: Carla

18  Johnson, Amy Lee, Raymond Tang, Lawrence Bardiner and Craig Nikitas.  See TAC

19  ¶¶ 107–122.  The City and County Defendants argue that the TAC falls outside the scope of

20  leave given by the Ninth Circuit, that Plaintiff fails to state a claim for some of the

21  allegations, and that the claims fail for various other reasons.  See C.C. Mot.  The Court will

22  address each claim in turn.

23              **1.    Section 1981 Claim**

24      Section 1981 prohibits discrimination with respect to contracts "on account of [the

25  plaintiff's] race or ethnicity."  Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116,

26  1123 (9th Cir. 2008).  "A 1981 claim must be based upon a contractual relationship."

27  Zimmerman v. City of San Francisco, No. c-93-4045-MJJ, 2000 WL 1071830, at *10 (N.D.

28

---

[22] Plaintiff makes no factual allegations regarding Amy Lee in the TAC.

United States District Court
For the Northern District of California

Cal. July 27, 2000) (citing Patterson v. McClean Credit Union, 491 U.S. 164, 171 (1989), superceded by statute on other grounds as recognized in CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008)); see also Domino's Pizza v. McDonald, 546 U.S. 470, 480 (2006) and Estate of Reynolds v. Martin, 985 F.2d 470, 475 (9th Cir. 1993).  But it is "well settled" that in California, the terms and conditions of public employment are determined by statute, not by contract.  See, e.g., Kemmerer v. Cnty. of Fresno, 200 Cal.App.3d 1426, 1432–35 (1988); Zimmerman, 2000 WL 1071830, at *10; Miller v. State of California, 18 Cal. 3d 808, 813 (1977).  Plaintiff's position as a public employee with the Department of Building Inspection thus lacks the requisite contractual foundation for a § 1981 claim against the City and County.[23]

Plaintiff also asserts a § 1981 claim against Amy Lee, however he fails to allege any facts in the TAC as to her conduct.  See TAC ¶¶ 54–86, 107–109; C.C. Mot. at 14 n.5.  The City and County's motion to dismiss this cause of action as to both Amy Lee and the City and County is therefore GRANTED.

### 2.    Section § 1983 Claim

To establish a violation under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).  A person acts under color of state law if he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  See West, 487 U.S. at 49 (citation and internal quotation marks omitted)).  Generally, a public employee acts under color of state law while acting in his

---

[23] Plaintiff claims in his TAC, see TAC ¶ 108, and in his Response to City and County's Motion to Dismiss ("Opp'n") at 11, that his employment was "a contractual relationship based on a memorandum of understanding that provides for, among other things, a progressive discipline system, a 'just cause' test for termination, and that no employer shall be discriminated against or singled out and terminated on account of his race or national origin[,]" see TAC ¶ 108. However, the Arbitrator upheld Plaintiff's termination without engaging in progressive discipline and found that his termination was not wrongful because he did, in fact, commit the acts charged against him. See Ex. A (Arbitration Decision) at 37. Moreover, the Court need not accept Plaintiff's legal conclusion that his employment relationship was contractual. See Papasan, 478 U.S. at 286.

United States District Court
For the Northern District of California

official capacity or while exercising his responsibilities pursuant to state law.  See Johnson v.
Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997) (citation and internal quotation marks
omitted).

Plaintiff alleges that all "Defendants' orders, authorizations, and other actions violated
Plaintiff's due process rights by: (a) subjecting him to prolonged, arbitrary, detention in his
home without charges or authority of any kind; (b) denying him access to counsel, gathering
information under false pretenses without a subpoena, [and] knowingly concocting evidence
to create probable cause . . . ."  See TAC ¶ 110.  Plaintiff's specific allegations in support of
his § 1983 claim are two-fold, involving first the investigative stage, and second the
prosecution stage.  See TAC ¶ 111.

As to the prosecution stage, the City and County Defendants rightly argue that the
Ninth Circuit "held that the DA's office and its employees . . . are immune from Plaintiff's
allegations that he was charged and prosecuted without probable cause under both federal
and state law."  See C.C. Mot. at 4; Mem. at 4 ("[W]e affirm the dismissal of the claims
against the District Attorney's Office and Tang for their conduct in filing criminal charges
against Fallay and for actions taken during the prosecution because absolute immunity
applies to those acts.") (citing Genzler v. Longanbach, 410 F.3d 630, 636–38 (9th Cir.
2005)).  Plaintiff's §1983 claim against Tang as to the prosecution phase is DISMISSED.

As to investigatory phase, Plaintiff alleges that Tang's conduct violated his rights
under § 1983.  See ¶¶ TAC 33–34, 37, 110–112.  The City and County Defendants argue that
(1) Tang acted pursuant to the search warrant, (2) Tang was permitted to detain Plaintiff
during the execution of the warrant for law enforcement interests, (3) Tang is entitled to
qualified immunity, and (4) Plaintiff's allegations are outside the scope of the amendment
permitted by the Ninth Circuit and do not allege dates to support tolling, which is what the
Ninth Circuit gave Plaintiff leave to amend.  See C.C. Mot. at 6–7; Mem. at 3–4.  While the
City and County Defendants argue that Plaintiff's allegations are new and beyond the scope
of his leave to amend, see C.C. Mot. at 3 ("In his SAC, Plaintiff failed to allege any specific
conduct by Mr. Tang other than his presence when the FBI agents detained him and searched

his home."), the facts underlying these allegations are not new, see SAC ¶ 37 ("Defendants . . . further went on to detain Plaintiff in his home, refused to let him leave, and refused his request to let him contact his wife, his friends, his work, and an attorney."); id. ("They continued to interrogate him and stopped him from calling his lawyer.").

The Ninth Circuit left it to this Court to determine "whether or not absolute immunity applies to the investigation prior to the criminal charge and proceedings[.]" See Mem. at 4. "Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or 'investigative functions normally performed by a detective or police officer.'" Genzler, 410 F.3d at 636 (citation omitted). Plaintiff alleges here that Tang violated Plaintiff's right to call his attorney during the execution of a search warrant, see TAC ¶ 37. Based on these allegations, Tang would not benefit from qualified immunity. "[Q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Padilla v. Yoo, 678 F.3d 748, 758 (9th Cir. 2012) (quoting Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2080 (2011)) (internal quotations omitted). "[C]onduct violates clearly established law when, at the time of the challenged conduct, . . . every reasonable official would have understood that what he is doing violates that right." See id. (quoting Al-Kidd, 563 U.S. at 2083).

Plaintiff alleges that Tang prevented him from using his phone to call his lawyer. See TAC ¶ 37. Tang might have had a legitimate interest in preventing Plaintiff from destroying evidence; however, depending on how long he prevented Plaintiff from calling his lawyer, those interests might have been outweighed.[24] See Ganwich v. Knapp, 319 F.3d 1115, 1123 (9th Cir. 2003) ("Even if at the start the officers had an interest in preventing the plaintiffs

---

[24] As the City and County Defendants note, Plaintiff also makes allegations regarding the manner in which he was arrested. See C.C. Mot. at 6–7; TAC ¶ 42–44. The City and County Defendants argue that these allegations also fall outside the scope of the leave to amend provided by the Ninth Circuit, and that "officers with probable cause may make a custodial arrest in a public place." See C.C.Mot. at 7 (citing Pierson v. Ray, 386 U.S. 547, 557 (1967)). They are correct. See United States v. Santana, 427 U.S. 38, 42 (1976).

United States District Court
For the Northern District of California

from making a telephone call, the officers' interest was soon outweighed by the plaintiffs' stronger interests in contacting relatives."). Tang's detention would have become unlawful when it was more intrusive than necessary to prevent Plaintiff from destroying evidence. Here, Plaintiff's allegation that he wanted to call his lawyer, see TAC ¶ 37, is sufficient to survive the pleading stage. The Court DENIES the City and County's motion to dismiss the § 1983 claim against Tang specifically as to the allegations regarding preventing Plaintiff from using his phone during the investigatory stage.

The City and County's motion to dismiss as to the remaining individual Defendants is also DENIED. Plaintiff alleges that Lawrence Badiner "wanted the plaintiff fired at any cost purely because of his race[,]" and threatened him to "make sure that the Plaintiff went to jail." See id. ¶¶ 25–26. Plaintiff alleges that Craig Nikitas "shares and brags about the same racial animus as . . . Badiner," and that Nikitas wrongly accused Plaintiff of having "withheld his projects until [Nikitas] bribed him." See id. ¶ 81. Plaintiff states that Nikitas was forced to admit on the stand that his allegation against Plaintiff was not true. See id. Plaintiff alleges that Carla Johnson was the FBI's "main informant[,]" see id. ¶ 83, and "injected herself into the investigation because of her hatred for African-American [sic] . . . ." See id. Johnson also allegedly conceded on the stand that she lied about telling investigators that the "cases plaintiff reviewed could have taken three years but the plaintiff reviewed them [more quickly] because of bribes plaintiff had taken from the Developers." See id. ¶ 84. The City and County Defendants argue that Plaintiff does not state a claim against them that is sufficient to survive a motion to dismiss. See C.C. Mot. at 3–4.

While the Department of Building Inspection terminated Plaintiff for failing to disclose a loan, a decision upheld in arbitration, see Ex. A at 35–41, Plaintiff alleges that "Defendant city officials are liable for violating Plaintiff's Constitutional rights because they directed, authorized, conspired to effect, and/or actively and substantially participated in Plaintiff's disparate treatments[,]" see TAC ¶ 112. At this motion to dismiss stage, Plaintiff raises a plausible claim for a violation of his constitutional right to due process by public

United States District Court
For the Northern District of California

1    employees acting under the color of state law.  Accordingly, the Court DENIES the City and

2    County Defendants' motion to dismiss the § 1983 claim as to Johnson, Nikitas, and Badiner.

### a.      Malicious Prosecution Claim

4        Plaintiff also brings a federal malicious prosecution claim.  See TAC ¶¶ 110–112.  As

5    already discussed herein, Plaintiff did not receive a favorable outcome at trial, and because

6    there was probable cause for Plaintiff's arrest and prosecution, his allegation of malicious

7    prosecution fail.[25]  The Court GRANTS the City and County Defendants' motion to dismiss

8    the federal malicious prosecution claim.

### b.      Monell Claim

10        Plaintiff also asserts a Monell claim against City and County Defendants, see TAC

11   ¶ 109, however it is not properly alleged.  Plaintiff alleges that "[t]he City created a pretext to

12   terminate the Plaintiff based on a long standing policy that is steeped in racial

13   discrimination."  See id. ¶ 109; see also Monell v. Dept. of Soc. Servs. of City of New York,

14   436 U.S. 658 (1978).  He refers to it as an "unspoken and invidious discrimination policy[,]"

15   see TAC ¶ 76, and belabors his allegation that he was terminated "for conducts that were so

16   common with staff of different races that it perfectly defines intentional and purposeful

17   discrimination when one considers similar and more egregious violations by other senior

18   staff of other races that went unpunished[,]" see id. ¶¶ 67–74.  The City and County

19   Defendants argue that this claim must fail because "[c]laiming simply that a City employee

20   violated his constitutional rights is insufficient to state a claim under 1983 because

21   '[r]espondeat superior or vicarious liability will not attach under § 1983.'"  See C.C. Mot. at

22   18 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (citing Monell, 436

23   U.S. at 694–95)).

24        In Monell, the Supreme Court held that if the "execution of a government's policy or

25   custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

26   represent official policy, inflicts the injury[,] [then] the government as an entity is

27

28            [25] The City and County Defendants did not submit the trial transcript, but they join in the Federal
     Defendants' request for the Court to take judicial notice of the transcript.  See C.C. Mot. at 10.

1   responsible under § 1983."  436 U.S. at 694.  To establish such municipal liability, a plaintiff

2   must satisfy four conditions: "(1) that [the plaintiff] possessed a constitutional right of which

3   he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to

4   deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the

5   'moving force behind the constitutional violation.'"  <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d

6   831, 835 (9th Cir. 1996) (quoting <u>Oviatt v. Pearce</u>, 954 F.3d 1470, 1474 (9th Cir. 1992)

7   (citation omitted)).

8          The Court will give Plaintiff leave to amend in order to properly plead this claim

9   pursuant to § 1983.[26]  Plaintiff relies on a custom rather than a written policy, which is

10  cognizable under <u>Monell</u>.  <u>See</u> TAC ¶ 76; <u>see also</u> <u>Hunter v. Cnty. of Sacramento</u>, 652 F.3d

11  1225, 1233 (9th Cir. 2011) (quoting <u>Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown</u>,

12  520 U.S. 397, 404 (1997) (citing <u>Monell</u>, 436 U.S. at 690–91) ("[A]n act performed pursuant

13  to a 'custom' that has not been formally approved by an appropriate decision[-]maker may

14  fairly subject a municipality to liability on the theory that the relevant practice is so

15  widespread as to have the force of law.")).  The custom appears to be the disparate

16  punishment of employees based on race.  Plaintiff provides several paragraphs of examples

17  of situations in which other employees committed various violations without punishment.

18  <u>See</u> TAC ¶¶ 68–74.  However, he does not allege how the municipality is liable or

19  responsible for the alleged conduct of individual employees.

20         In order to properly plead a <u>Monell</u> claim, Plaintiff must identify how "the

21  municipality <u>itself</u> cause[d] the constitutional violation at issue."  <u>See</u> <u>City of Canton</u>, 489

22  U.S. at 385.  This is because "[r]espondeat superior or vicarious liability will not attach under

23  § 1983."  <u>See</u> <u>id.</u> (citation omitted); <u>see also</u> <u>id.</u> at 387 ("Nor, without more, would a city

24  automatically be liable under § 1983 if one of its employees happened to apply the policy in

25  an unconstitutional manner . . . .").  In amending, Plaintiff must make a showing as to the

26  "direct causal link between a municipal policy or custom and the alleged constitutional

27  deprivation."  <u>See</u> <u>id.</u> at 5.  Additionally, Plaintiff must make a showing that "[t]he custom

28  

_____

[26] This is the first time Plaintiff has alleged a <u>Monell</u> claim.

[is] so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy[]'" because "[l]iability for improper custom may not be predicated on isolated or sporadic incidents.'" See Hunter, 652 F.3d at 1233 (quoting Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)). Thus, the Court GRANTS the City and County Defendants' motion to dismiss the Monell claim, without prejudice.

### 3.   Section 1985 Claim

Plaintiff alleges that the City and County violated his § 1985 rights through a "conspiracy steeped in racial animus[,]" that they "jointly consider[ed] and decid[ed] upon the detention, arrest, and termination of the Plaintiff[] . . . and publicizing it in such a defamatory way . . . ." See TAC ¶¶ 113–114.  Plaintiff provides no further details in support of this claim.  The City and County Defendants argue that this claim must fail because Plaintiff bases his § 1985 claim on the same conduct that forms the basis of his § 1983 claim and thus, they fail for the same reasons.[27]  See C.C. Mot. at 17.  Furthermore, the City and County Defendants argue that "Plaintiff also fails to plead the necessary discriminatory animus against the only City defendant involved in such detention: DA Investigator Raymond Tang."  See id.

The City and County Defendants' motion to dismiss this cause of action is GRANTED, without prejudice.  First, "to state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983."  Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 930 (9th Cir. 2004) (citing Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989)).  Second, "[t]o state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'"  See Olsen, 363 F.3d at 929 (quoting Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989)).  In particular, a complaint should include allegations of a "discussion of an agreement amongst the [Defendants] to violate [a Plaintiff's] constitutional rights."  See id. at 929–30.  The TAC fails to include such information beyond mere

---

[27] The City and County Defendants rightly note that while it is not clear under which subsection of the statute Plaintiff alleges violations, § 1985(3) is the only one applicable.  See C.C. Mot. at 17 n.8.

United States District Court
For the Northern District of California

conclusory statements.  See, e.g., TAC ¶ 113 (". . . there was a Meeting of the Minds among them regarding their desire to frame, discredit, punish, suppress and otherwise infringe upon [Plaintiff's] lawful and protected rights.").  "Generally, a district court should allow a plaintiff to amend the pleadings when a § 1985 claim is insufficiently pled."  Id. at 930 (citing Gillespie v. Civiletti, 629 F.3d 637, 641 (9th Cir. 1980)).  The Court gives Plaintiff leave to amend his § 1985 claim as to Tang, Badiner, Nikitas, and Johnson.[28]

Finally, the Court instructs Plaintiff to allege the date tolling started as it pertains to his § 1983 and § 1985 claims.  The Ninth Circuit held that "amendment would not have been futile[]" if Plaintiff could allege this information, see Mem. at 4, and Plaintiff failed to follow the court's direction.[29]

### 4.  State Law Claims

The City and County Defendants argue that Plaintiff's state law claims are time-barred as to Tang.  See C.C. Mot. at 21.  They argue that "Plaintiff was obligated to file a California Government Claim no later than January 27, 2006[]" because his allegations arise out of Tang's conduct on July 27, 2005.  See id.; see also Cal. Gov't Code § 911.2(a) (government claim must be filed within six months of the accrual of the cause of action).  Furthermore, the City and County Defendants argue that, as to Plaintiff's August 4, 2005 arrest, a claim "needed to be filed on or before February 6, 2006."  See id.  "[A] cause of action for false imprisonment accrues upon termination of the imprisonment . . . ."  Scannell v. Cnty. of Riverside, 152 Cal.App.3d 596, 606 (1984) (citing Collins v. Cnty. of Los Angeles, 241 Cal.App.2d 451, 455–56 (1996).  Plaintiff filed his government claim (his

---

[28] The City and County Defendants are correct that Plaintiff does not allege discriminatory remarks by Tang, see C.C. Mot. at 18 ("Plaintiff does allege that during the detention, FBI Agent Carr made racially derogatory statements . . . [i]n sharp contrast, he does not identify a single racial statement attributable to Tang."), however given the alleged racial animus of the entire conspiracy, see TAC ¶¶ 34–40, and the possibility that amendment would not be futile, the Court allows Plaintiff to amend as to Tang as well.

[29] If Plaintiff fails to amend to include this information, his claims might be time-barred as this Court originally held.  See June 2010 Order (quoting Taylor v. Regents of Univ. of Cal., 993 F.2d 710, 711–12 (9th Cir. 1993) ("California's two year 'statute of limitations for personal injury actions governs claims brought pursuant to . . . [§ 1983 and § 1985].' . . . Fallay filed his initial Complaint against the City Defendants on April 30, 2008.  In order for his claims to be timely, then, they must have accrued no earlier than April 30, 2006.").

United States District Court
For the Northern District of California

1  claim for violations of state and federal law) on October 22, 2007.  See Ex. D (dkt. 164-4);

2  see also Gant v. Cnty. of Los Angeles, 594 F.App'x 335, 338 (9th Cir. 2014) (unpublished)

3  ("[A] plaintiff may not sue a public entity for 'money or damages' until he has presented the

4  claim to that entity, and that entity has either acted upon or rejected the claim.") (citation

5  omitted).[30]  The Court cannot extend time for purposes of Plaintiff's state law claims against

6  Tang.  See Cal. Gov't Code § 945.3 ("[T]his section shall not extend the time within which a

7  claim is required to be presented pursuant to Section 911.2.).[31]  Thus, any state law claims

8  against Tang are DISMISSED.  The Court will address each allegation as to the other City

9  and County Defendants in turn.

10                        **a.      False Arrest and False Imprisonment Claims**

11        Plaintiff's allegations of false arrest and false imprisonment are DISMISSED.  He

12  alleges that Tang did not allow him to leave his home while executing a search warrant and

13  that "[t]he defendants' described conducts [sic] constitute false arrest and false imprisonment

14  of the Plaintiff."  See TAC ¶¶ 33, 117.  Under California law, "false arrest is not a different

15  tort" but "is merely one way of committing a false imprisonment."  See Martinez v. City of

16  Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (citation and quotation omitted); see also

17  Asgari v. City of Los Angeles, 15 Cal.4th 744 (1997).  In Asgari, the California Supreme

18  Court defined false imprisonment as the "violation of the personal liberty of another" and

19  "without lawful privilege."  See Asgari, 15 Cal.4th at 757 (citations omitted).  The elements

20  of false imprisonment are (1) the non-consensual, intentional confinement of a person, (2)

21  without lawful privilege, and (3) for an appreciable period of time, however brief.  See

22  Blaxland v. Commonwealth Director of Public Prosecutions, 323 F.3d 1198, 1205 (9th Cir.

23  2003) (citations omitted).

24

25        [30] The Court can take judicial notice of the date on which Plaintiff filed this document because
    it is a matter of public record.  See Reyn's Pasta Bella, LLC, 442 F.3d at 746 n.6.

26

27        [31] The City and County Defendants also argue that Plaintiff's state law claims, aside from false
    imprisonment, are barred by Cal. Gov't Code § 821.6.  See C.C. Mot. at 21.  Section 821.6 states that
28  "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or
    administrative proceeding within the scope of his employment, even if he acts maliciously and without
    probable cause."  See Cal. Gov't Code 821.6.

United States District Court
For the Northern District of California

First, Plaintiff was arrested pursuant to a valid arrest warrant obtained with probable cause.  Second, Tang was permitted to detain Plaintiff while executing a valid search warrant.  See Tekle v. United States, 511 F.3d 839, 848 (9th Cir. 2006) (citing Muehler v. Mena, 544 U.S. 93, 98 (2005)) ("'An officer's authority to detain incident to a search is categorical . . . .'"); see also TAC ¶ 33.[32]  Furthermore, officers have the "authority to use reasonable force to effectuate the detention[,]" see Muehler, 544 U.S. at 98–99 (citation omitted), and "apart from police conduct that is per se unreasonable, [a court] must balance privacy concerns and law enforcement concerns to determine if the detention was reasonable[,]" see Tekle, 511 F.3d at 849 (citing Ganwich, 319 F.3d at 1120).  Because the arrest here was with "lawful privilege," see Blaxland, 323 F.3d at 1205, this claim is DISMISSED.

## b.    Cal. Civ. Code § 52.1(b) Claims

California Civil Code § 52.1 is the state analog to a § 1983 claim.  See Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009) (citations omitted).  "Thus, where a plaintiff's claims under the federal and state constitutions are co-extensive, the discussion of a plaintiff's federal constitutional claim resolves both the federal and state constitutional claims."  Id. (citing Los Angeles Cnty. Bar Ass'n. v. Eu, 979 F.2d 697, 705 (9th Cir. 1992)).  "To obtain relief under this statute, a plaintiff must prove that a defendant tried to, or did, prevent the plaintiff from doing something that he had the right to do under the law, or to force plaintiff to do something that he was not required to do under the law."  Id. (citations omitted).  However, "where the coercion is inherent in the constitutional violation alleged, i.e., an over-detention . . . the statutory requirements of 'threats, intimidation, or coercion' is not met.  The statute requires a showing of coercion independent from the coercion inherent in the wrongful [conduct] itself."  See Shoyoye v. Cnty. of Los Angeles, 203 Cal.App.4th 947, 959 (2012).  Plaintiff alleges that the City and County Defendants falsified evidence and threatened him with "loss of liberty" as well as the "physical and emotional threat of going to jail, with clear malice . . . ."  See TAC ¶ 118.  The same allegations that support Plaintiff's

---

[32] Whether Tang was permitted to prevent Plaintiff from using his phone is another matter.

§ 1983 claim also support his § 52.1(b) claim.  Because the Court denies the motion to dismiss the § 1983 claim as to Nikitas, Johnson and Badiner, the Court also DENIES the motion to dismiss Plaintiff's § 52.1(b) claim as to these same individuals.  California explicitly holds government entities vicariously liable for the torts of their employees, see Cal. Gov. Code § 815.2(a), so the Court also DENIES the motion to dismiss the § 52.1(b) claim as to the City and County of San Francisco.

### c.     Cal. Civ. Code § 51.7 Claim

California Civil Code § 51.7 provides that "[a]ll persons have the right to be free from any violence, or intimidation by threat of violence, committed against [an individual's] person[] or property because of [his or her] race . . . ."  See Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1289 (9th Cir. 2001) (citing Cal. Civ. Code § 51.7).  Plaintiff does not allege that the City and County Defendants used violence or intimidation by threat of violence.  Plaintiff alleges being "threatened and intimidated by another possible fake investigation beyond the trial[,]" see TAC ¶ 119, which does not rise to the level of violence encompassed in § 51.7.  This claim is DISMISSED with prejudice.

### d.     Malicious Prosecution Claim

To succeed on a state malicious prosecution claim, a Plaintiff must satisfy the same requirements as necessary for a federal malicious prosecution claim.  See Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) ("Under California law, a malicious prosecution claim is disfavored and requires proof that the underlying litigation: (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.") (quoting Zamos v. Stroud, 32 Cal.4th 958 (2004)).  "Because probable cause to prosecute is also objective and is an absolute defense against a malicious prosecution claim, [Plaintiff's] malicious prosecution claim likewise fails."  See Radocchia v. City and Cnty. of Los Angeles, 479 F.App'x 44, 45 (2012) (citing Lassiter v. City of Bremerton, 556 F.3d 1049, 1054–55 (9th Cir. 2009)).  Moreover, for the reasons

1   discussed above regarding Plaintiff's federal malicious prosecution claim, this claim also

2   fails.  The Court DISMISSES this claim with prejudice.

3                    **e.      Intentional Infliction of Emotional Distress Claim**

4           The conduct underlying a claim for intentional infliction of emotional distress must be

5   "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

6   decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

7   Cochran, 65 Cal.App.4th at 496 (citation omitted).  A court may make the initial

8   determination at the pleading stages as to whether a defendant's alleged conduct reasonably

9   may be regarded as so "outrageous" as to permit recovery.  See Trerice v. Blue Cross of Cal.,

10  209 Cal.App.3d 878, 883 (1989).  The City and County Defendants' conduct does not rise to

11  the level of "beyond all bounds of possible decency."  Plaintiff's claim is DISMISSED with

12  prejudice.

13  **IV.     CONCLUSION**

14          For the foregoing reasons, the Court:

15  • GRANTS the Federal Defendants' motion to dismiss in full, with prejudice;

16  • GRANTS the FASIC Defendants' motion to strike in full;

17  • GRANTS the City and County Defendants' motion to dismiss the § 1981 claim, with

18  prejudice;

19  • GRANTS the City and County Defendants' motion to dismiss all claims alleged against

20  Amy Lee, with prejudice;

21  • DENIES the City and County Defendants' motion to dismiss the § 1983 claim as to DA

22  Investigator Tang as to his pre-arrest, investigative conduct in depriving Plaintiff the use of

23  his phone, but grants as to the rest of the § 1983 claim as to Tang;

24  • DENIES the City and County Defendants' motion to dismiss the § 1983 claim as to

25  Lawrence Badiner, Carla Johnson, and Craig Nikitas;

26  • GRANTS the City and County Defendants' motion to dismiss the federal malicious

27  prosecution claim, with prejudice;

28

United States District Court
For the Northern District of California

• GRANTS the City and County Defendants' motion to dismiss the <u>Monell claim</u>, without prejudice;

• GRANTS the City and County Defendants' motion to dismiss the § <u>1985 claim</u> as to Tang, Badiner, Nikitas, and Johnson, without prejudice;

• GRANTS the City and County Defendants' motion to dismiss the <u>state law claims against Tang</u>, with prejudice.

• GRANTS the City and County Defendants' motion to dismiss the <u>state law false arrest and false imprisonment claims</u>, with prejudice.

• DENIES the City and County Defendants' motion to dismiss the <u>state law violations of Cal. Civ. Code § 52.1(b)</u> as to Lawrence Badiner, Carla Johnson, Craig Nikitas, and the City and County of San Francisco;

• GRANTS the City and County Defendants' motion to dismiss with the <u>state law violation of Cal. Civ Code § 51.7</u>, with prejudice, as to Lawrence Badiner, Carla Johnson, Craig Nikitas, and the City and County of San Francisco.

• GRANTS the City and County Defendants' motion to dismiss the <u>state law malicious prosecution and intentional infliction of emotional distress claims</u>, with prejudice.

• REMINDS Plaintiff that, upon amendment, he must remember to include allegations in support of the tolling of his § 1983 and § 1985 claims.

Plaintiff may amend, if he chooses to do so, <u>within thirty (30) days</u> of this Order. He should be mindful not to exceed the scope of the leave to amend he is being given, as he has done before.

**IT IS SO ORDERED.**

Dated: December 4, 2015

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE